[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 1, 2008
THOMAS K. KAHN
CLERK

No. 07-15326
Non-Argument Calendar

_____

D. C. Docket No. 07-00236-CV-J-33 & 05-BK-03817-JAF

In Re:

WINN-DIXIE STORE, INC.,    Debtor,

_____

LIQUIDITY SOLUTIONS, INC.,
E&A FINANCING II, L.P.,
E&A SOUTHEAST, L.P.,
SHIELDS PLAZA, INC.,
WOODBERRY PLAZA (E&A), L.L.C.,
VILLA RICA RETAIL PROPERTIES, LLC,
HALPERN ENTERPRISES, INC.,
BANK OF AMERICA, as Trustee,

Plaintiffs-Appellants,

ORIX CAPITAL MARKETS, LLC,
CWCAPITAL ASSET MANAGEMENT, LLC,

Plaintiffs,

versus

WINN-DIXIE STORES, INC.,
ASTOR PRODUCTS, INC.,
CRACKIN' GOOD, INC.,
DEEP SOUTH DISTRIBUTORS, INC.,
DEEP SOUTH PRODUCTS, INC., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 1, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Appellants are landlords of several of the Appellees Winn-Dixie Stores, Inc. ("Winn-Dixie") and its affiliated companies. Appellants held guaranteed, prepetition claims against debtor Winn-Dixie. These claims were extinguished as part of a settlement among Winn-Dixie's creditors that was memorialized in Winn-Dixie's Chapter 11 reorganization plan in its bankruptcy proceedings. In this appeal, Appellants challenge the district court's dismissal of their consolidated appeal of the bankruptcy court's Confirmation Order of Winn-Dixie's reorganization plan and the court's order related to the guaranteed claims. The appeal was dismissed on grounds of equitable mootness because the district court determined that it was unable to afford the Appellants relief, in part, because the plan had already been substantially consummated and the Appellants had failed to seek a stay of the Confirmation Order. Appellants now seek to reverse the district court's finding of mootness and to reinstate their appeal so that it may be heard on

the merits by the district court. Finding that the district court appropriately determined that the consolidated appeal had been equitably mooted, we affirm.

## I. FACTS

Winn-Dixie filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on February 21, 2005. At the time of filing, the company had more than one billion dollars worth of prepetition obligations to various creditors—including, among these, the Appellant landlords. The Appellants are those who, among the larger pool of Winn-Dixie's landlords, had prepetition "guaranteed" claims, whereas other landlords did not. To resolve a complex dispute among Winn-Dixie's creditors, which is beyond the scope of this appeal, the creditors arrived at a compromise as to Winn-Dixie's affiliated debtors' substantive consolidation. This compromise ultimately divided the company's debtors into five different classes and distributed new common stock in differing proportions among the classes. Importantly, the compromise did not provide for any special allotment of shares to those among the landlord class who were holders of guaranteed claims.

This consolidation compromise was memorialized in Winn-Dixie's reorganization plan under Section 1121 of the Bankruptcy Code ("the Plan"). The Plan required Winn-Dixie to (1) cancel all of its old common stock; (2) issue new

3

common stock to be listed on NASDAQ; (3) pay its administrative, priority, and secured creditors in cash and in full; (4) distribute its new stock to unsecured creditors who had allowed claims; (5) retire its debtor-in-possession financing; and, (6) enter into a $725 million exit financing facility with Wachovia Bank. The Plan received the support of an overwhelming majority of Winn-Dixie's more than 5,000 creditors, but roughly 23% of the landlords—principally those with guaranteed claims—rejected the Plan.

Under the Plan and pursuant to the compromise among the creditors, Winn-Dixie distributed its new stock to unsecured creditors at set distribution percentages for allowed claims by class: noteholders obtained 96.5% satisfaction of their claims (62.69 shares per $1000 of allowed claims); landlords obtained 70.6% satisfaction of their claims (46.26 shares per $1000 of allowed claims); vendors also obtained 70.6% satisfaction of their claims (46.26 shares per $1000 of allowed claims); retirees obtained 59.1% satisfaction of their claims (38.75 shares per $1000 of allowed claims); and all other unsecured creditors obtained 53.2% satisfaction of their claims (34.89 shares per $1000 of allowed claims). The Plan specifically did away with any prepetition guaranteed claims: "[A]ll claims based on prepetition unsecured guarantees by one Debtor in favor of any of the Debtors . . . shall be eliminated, and no separate distributions under the Plan

4

shall be made on account of claims based upon such guarantees." (District Court Order at 5.) The Plan eliminated Appellant landlords' guaranteed claims—and thus rendered the entire class of landlords equal under the Plan — while preserving, in effect, the guaranteed claims of noteholders who received a more favorable stock distribution under the Plan on their claims. Appellants argued before the courts below that the disparate treatment of their guaranteed claims was unfair under the terms of the Plan.

The bankruptcy court held a confirmation hearing, received evidence and briefs, and issued findings of fact and law and a confirmation order, upon finding the Plan "fair and equitable and in the best interests of" the Appellees. On appeal of the confirmation order to the district court,[1] the Appellants renewed their equitable arguments and sought additional stock distributions from a pool of stock held in reserve under the Plan for paying disputed claims, despite the Plan's elimination of pre-petition guaranteed claims. Winn-Dixie argued that the district court should not hear the Appellants claims on the merits because, since the Appellants failed to seek a stay of the Confirmation Order, the company had already substantially consummated the Plan and relief was no longer available to

---

[1] Numerous landlords separately appealed the bankruptcy court's Confirmation Order and the related Guaranteed Claim Order, which the district court consolidated into a single appeal.

5

the Appellants. Agreeing with Winn-Dixie, the district court dismissed the consolidated appeal on the basis of equitable mootness, as described by our decisions in In re Holywell Corporation, 911 F.2d 1539 (11th Cir. 1990), rev'd on other grounds by Holywell Corp. v. Smith, 503 U.S. 47, 112 S. Ct. 1021 (1992), and In re Club Associates, 956 F.2d 1065 (11th Cir. 1992). Appellants now seek to reverse the dismissal of their consolidated appeal to the district court.

## II. STANDARD OF REVIEW

We review de novo determinations of law made by either the district court or the bankruptcy court.[2] In re Club Assoc., 956 F.2d at 1069. The bankruptcy court's factual findings are reviewed under the clearly erroneous standard and the district court is not authorized to make independent factual findings when it undertakes review of the bankruptcy court's decision. Id.

## III. DISCUSSION

Appellants raise several arguments: (1) the district court ignored the separate order disallowing the guaranteed claims in its analysis of the equitable

---

[2] The Appellees' brief recommends this Court review the district court's dismissal of an appeal on equitable mootness grounds for abuse of discretion under In re Continental Airlines, Inc., 91 F.3d 553, 560 (3d Cir. 1996). We are bound by our decision in In re Club Associates, however, wherein we reviewed the district court's determination that an appeal was moot under the standard articulated here. See United States v. Woodard, 938 F.2d 1255, 1258 (11th Cir. 1991) (articulating rule that decision of prior panel can only be overruled by the en banc court or the Supreme Court).

mootness doctrine; (2) the district court erred in dismissing the consolidated appeal on equitable mootness grounds; and, (3) the Appellees' grounds for moving for dismissal of the appeal to the district court were flawed. For the reasons discussed below, we do not find Appellants' arguments persuasive.

A.    Appeal of the Separate Order Related to Guaranteed Claims

As an initial matter, we are unpersuaded by Appellants' argument that because the district court failed to specifically address the bankruptcy order related to dismissal of the guaranteed claims, it "completely disregarded" those issues when finding the appeal moot. It is abundantly clear that the disallowance of the landlords' guaranteed claims was inextricably wrapped up with the settlement among the creditors with respect to consolidation and was memorialized in the reorganization plan that the bankruptcy court approved in its Confirmation Order. Indeed, the only real substantive issue asserted by the parties on appeal to the district court appears to have been whether the Confirmation Order was fair to the landlords because the settlement did away with their guaranteed claims. Although the bankruptcy court did enter a separate order disallowing the specific guaranteed claims at issue here, it is incorrect to say that the district court disregarded this order and the substantive issues it raised when the court addressed the Confirmation Order and dismissed the consolidated appeal on mootness grounds.

Whether the district court could afford relief to Appellants on their guaranteed claims—and thus, in effect, overturning the order related to the guaranteed claims in addition to modifying the confirmation order—was the primary substantive issue addressed by the district court in its thorough mootness analysis.

B.       Equitable Mootness Issues

Appellants assert that their appeal of the Confirmation Order was not moot because the district court could have afforded them relief without rescinding transactions already undertaken pursuant to the reorganization plan. "The mootness doctrine, as applied in a bankruptcy proceeding, permits the courts to dismiss an appeal based on its lack of power to rescind certain transactions." In re Holywell Corp., 911 F.2d at 1543. "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief. Put another way, the court must determine whether the reorganization plan has been so substantially consummated that effective relief is no longer available." In re Club Associates, 956 F.2d at 1069. In determining whether an appeal of a reorganization plan is moot, courts will necessarily consider what relief a court can provide, given the status of the reorganization plan and its consummation in the interim time. Id.; see also In re Holywell Corp. 911 F.2d at 1543; Miami Ctr. Ltd. P'ship v. Bank of N.Y., 820 F.2d 376, 379 (11th Cir. 1987).

Importantly, although not dispositive to the availability of judicial relief, see In re Club Assoc., 956 F.2d at 1070 n.13, when a party has failed to seek a stay of the confirmation order pending appeal to the district court, for practical reasons it is often difficult for courts to afford relief to the appealing party because the court is unable to rescind transactions taken in consummation of the reorganization plan and confirmation order enforcing said plan. See Miami Ctr. Ltd. P'ship, 838 F.2d at 1555 (noting that dismissal of an appeal on grounds of mootness is often granted when an appeal that ultimately reversed the confirmation order would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court") (internal quotations and citations omitted). We will, therefore, "not entertain any challenge to the Plan which seeks to modify or amend its provisions," when, in absence of a stay, substantial consummation of the plan has been achieved. In re Holywell Corp., 911 F.2d at 1543; see also 11 U.S.C. § 1127(b) (2006) ("The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan . . . ."). This is precisely such a case.

Appellants assert that their appeal of the confirmation order was not moot because the court could have afforded them relief without dismantling the

confirmation plan or affecting the rights of third parties because the court could have awarded Appellants common stock from the nine million shares held in reserve under the Plan for disputed claims.  But this argument overlooks the fact that to have afforded Appellants any relief on their guaranteed claims, the district court—as it correctly observed—would have had to alter or amend the reorganization plan itself which expressly extinguished the very claims upon which the Appellants now seek to obtain relief.  In other words, central to the reorganization plan itself was the consolidation settlement, of which an integral component was disallowance of additional distributions to the Appellants solely because the amounts owed by one debtor entity was guaranteed by another debtor. We also thus agree with the district court that the requested modification of the Plan would be material.  To provide the relief sought by Appellants—additional distributions because of such guarantee—would require the court to modify the terms and conditions of the reorganization plan, which at this point—in part because of Appellants' failure to seek a stay—has been substantially consummated by Winn-Dixie.[3]  Therefore, even were the relief Appellants' sought before the

---

[3] Importantly, on appeal, Appellants do not challenge the district court's finding that the Plan has been substantially consummated.  The district court made a factual finding with regard to substantial consummation based on an affidavit proffered by Winn-Dixie after execution of the Confirmation Order.  See In re Manges, 29 F.3d 1034, 1041 (5th Cir. 1994) (permitting reviewing court to receive facts related to mootness).  We see no reason to disturb the district court's finding on this issue, considering especially that the appellants have not challenged the

10

district court available to them by way of the reserve stock, an order granting Appellants relief would necessarily alter or amend the terms of the Plan and the Confirmation Order.  We decline, as the district court did, to permit an appeal that would lead to an alteration or amendment of a substantially consummated reorganization plan.[4]

C.      Winn-Dixie's Grounds for Seeking Dismissal

Appellants argue that Winn-Dixie's grounds for seeking dismissal of their appeal to the district court were flawed for two reasons: first, the absence of a stay does not, in and of itself, command a finding of mootness; and, second, similarly, substantial consummation of a reorganization plan will not singularly render an appeal moot.  Appellants are of course correct that neither factor—failure to seek a stay or substantial consummation—in and of itself renders an appeal moot.  See In re Club Assoc., 956 F.2d at 1069 ("As the district court properly noted, substantial consummation by itself does not resolve the issue.  Even if substantial consummation has occurred, a court must still consider all the circumstances of the

_____

district court's finding of substantial compliance.

[4] Appellants assert that the considerations of equity that underlie this mootness doctrine are on their side.  However, it is anything but clear that the equities are in their favor in this case, considering especially their own failure to seek a stay in the execution of the Confirmation Order and also their representation in the settlement which led to the reorganization plan that extinguished their guaranteed claims in the first instance.

case to decide whether it can grant effective relief."). But of the factors we identified in <u>Club Associates</u>,[5] none here favor permitting Appellants to proceed with their appeal. The district court thoroughly discussed these factors. No argument in the Appellants' brief on appeal leads us to question the district court's well-reasoned discussion.

Moreover, we cannot fairly say, as the Appellants assert, that the fact of substantial consummation itself is irrelevant to the relief sought by the Appellants here. Even though the relief Appellants seek—issuance of additional stock from the reserve pool—would not undo many of the transactions that have already taken place pursuant to the Plan, it would, necessarily, "modify or amend" the Plan itself and its provisions with regard to the landlords' guaranteed claims. Furthermore, and significantly, it would also diminish the stock available to those creditors, unlike the Appellants, whose disputed claims were not resolved by the terms of the Plan. The type of relief sought here is, again, precisely the type of relief that our

---

[5] In a footnote, the Court suggested the relevant analysis for mootness should include an evaluation of several questions:

> Has a stay pending appeal been obtained? If not, then why not? Has the plan been substantially consummated? If so, what kind of transactions have been consummated? What type of relief does the appellant seek on appeal? What effect would granting relief have on the interests of third parties not before the court? And, would relief affect the re-emergence of the debtor as a revitalized entity?

<u>In re Club Assoc.</u>, 956 F.2d at 1069 n.11.

12

decisions in <u>Holywell</u> and <u>Club Associates</u> make clear we will not afford once a plan has been substantially consummated and relied upon by debtors, creditors, and third-parties alike.

## IV. CONCLUSION

For the foregoing reasons, the district court's decision finding the Appellants' consolidated appeal moot is

**AFFIRMED.**[6]

---

[6] Both the Appellants' and Appellees' requests for oral argument are denied.